Shaver v. Nash.

4-3709

Opinion delivered February 18, 1935.

*John L. McClellan,* for appellant.

*J. H. Lookadoo,* for appellee.

Baker, J. J. F. Shaver, the appellant here, had undertaken to transport in his automobile the appellees, his father-in-law and mother-in-law, from Gurdon to El Dorado. An accident occurred which caused serious injuries to each of the appellees.

The appellees filed separate suits against J. F. Shaver in the Clark Circuit Court. The complaints were identical in form. The facts as to liability were the same. Upon trial verdict was rendered for both of the plaintiffs against the defendant, fixing L. M. Nash's damages at $2,000, and Mrs. Jessie L. Nash's damages at $3,500. It is from these judgments that this appeal has been prayed.

The complaints alleged that "one of the rods of the automobile that is down under the head of the automobile, that had to do with the operation of the car, came loose or broke loose for the reason that it was worn, and that the defendant knew that it was in this unsafe and dangerous condition, or by the exercise of ordinary care he could have known that it was in this condition. * * * Due to this rod coming loose, the defendant lost control of his car, and it ran off an embankment about ten feet high, threw the plaintiff up against the side of the top of

the car which tore some of the muscles loose from plaintiff's shoulder and sprained her shoulder and arm, tore some of the muscles and ligaments loose in the small of plaintiff's back and bruised her head, which injuries have rendered plaintiff totally unable to do any work, and she will never be able to do any work.''

An amendment was later filed to the complaints alleging that the defendant was negligent by driving his car at an excessive and high rate of speed. Demurrers were filed and, being overruled, answers were then filed.

There is no dispute as to the facts. Upon the trial of the case one of the witnesses, an automobile mechanic, testified that only a few days before the accident he had gone over the defendant's car ''doing a general job of tightening, and I noticed the steering system was in bad order. So I told Mr. Shaver what he would need, and he told me to go ahead and get the parts, and I got the parts, and he was to bring it down the next morning, but he did not. Two or three days after that I was in his store, told him I had the parts, and he said he couldn't spare the car that morning, but he would have it down there the next morning. I don't know, it rocked on possibly two or three or four days, and I was back in there and asked him what morning he meant, and he said he was so busy with his car he couldn't bring it down there right then.'' Three or four day after that he told him he had had a wreck with the car. The witness identified a piece or part that had fallen from the car at the time and place of the wreck. Witness said the part identified was a part of the tie rod; that he had told the defendant if he didn't have it fixed the first thing he knew he would be in the ditch.

It was upon this evidence, as to liability, that the case went to the jury. The court gave the following instruction, among others: ''Unless the greater weight of evidence in this case shows that the radius rods of the car were defective, and such fact was known to the defendant, you will not consider the allegation of excessive speed for any purpose.''

This instruction is in accordance with the law as announced in the case of *Shrigley* v. *Pierson,* 189 Ark. 386,

72 S. W. (2d) 541, and also in accordance with the opinion in *Howe* v. *Little,* 182 Ark. 1083, 34 S. W. (2d) 218.

From the testimony and undisputed facts it is shown that appellant knew the defective condition of the car; that it was defective to such an extent that it could not be safely driven.

The defendant requested certain instructions, one of which was to the effect that the defendant was under no duty or obligation to make inspections, and that as a matter of law the plaintiffs took the car in whatever condition it was found, and at their own risk. This instruction would have been correct, except for the fact that the defendant knew the dangerous condition of the car at the time he took plaintiffs upon the trip. He knew then that it was dangerous to drive the car in its condition. He had had the garage man to order parts to correct that dangerous condition, but had been too busy to have the proper repairs made.

Other instructions were offered by the defendant as to the condition of the brakes, which were refused by the court, but the case went to the jury upon the sole question of such defects as were actually known to the defendant, and these defects were in the radius rods of the car and no other, and, on that account, it was not improper to refuse instructions as to the condition of the brakes upon the car, as plaintiffs did not rely upon or establish by proof any defect as to the braking system. Upon the other hand, it was shown that the brakes had but recently been repaired.

The instructions given by the court on its own motion, and at the request of the plaintiff, and others given at the request of the defendant, covered the law of the case under the authorities above cited. There is no reason why further facts should be discussed or that instructions given or refused should be set out and argued here.

The evidence was sufficient to support the verdict rendered. The case was submitted to a jury upon a correct theory, and there was no prejudicial error as to the admission or exclusion of any testimony or evidence or as to any instruction given or refused.

The judgments of the trial court are therefore affirmed.